UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00067 HBB

JOSE CANCHOLA, Sr.
ADMINISTRATOR FOR THE ESTATE OF
CINDA R. CANCHOLA                                                                PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                          DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Cinda R. Canchola[1] ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 18) and Defendant (DN 19) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the

---

[1] Cinda R. Canchola filed the complaint (DN 1). However, she died on July 25, 2016 (DN 13-1 Kentucky Certificate of Death). On September 28, 2016, the Circuit Court for Allen County, Kentucky, appointed Jose Canchola, Sr., as administrator of the Estate of Cinda R. Canchola (DN 17). To avoid confusion, the undersigned will refer to Ms. Canchola as the Plaintiff throughout this document.

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered August 22, 2016 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

On October 18, 2012, Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income payments (Tr. 12, 256-262). Plaintiff alleged that she became disabled on November 10, 2010 as a result of a mental breakdown, chronic anxiety, diabetes, diabetic neuropathy, and hypercalcenia (Tr. 12, 281). On May 26, 2015, Administrative Law Judge Richard E. Guida ("ALJ") conducted a video hearing from Baltimore, Maryland, with Plaintiff and her counsel participating in Bowling Green, Kentucky. Also present and testifying was William H. Reed, Ph.D., a vocational expert.

In a decision dated June 3, 2015, the ALJ found that Plaintiff's insured status expired on September 30, 2013 (Tr. 14). The ALJ evaluated Plaintiff's adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 12-20). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 6, 2010, the alleged onset date (Tr. 14). At the second step, the ALJ determined that Plaintiff's COPD, diabetes, neuropathy, and obesity are "severe" impairments within the meaning of the regulations (Id.). The ALJ also determined that Plaintiff's mental impairment is a "non-severe" impairment within the meaning of the regulations (Tr. 14-16). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work because she can only perform postural activities; can never use ladders, ropes, or scaffolds; and must avoid concentrated exposure to vibrations, fumes, odors, dusts, gases, poor ventilation, and hazards (Tr. 16). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 18).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 18-19). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from November 6, 2010, through the date of the decision (Tr. 19).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 7-8). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion,

even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

### The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.  In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step because he concluded that she could still perform work that exists in significant numbers in the national economy despite the limitations imposed by her physical and mental impairments.

1

Plaintiff raises two challenges to the ALJ's residual functional capacity assessment set forth in Finding No. 5 (DN 18).  The first challenge concerns a Physical Residual Functional Capacity Assessment dated October 6, 2014 (DN 18-1 PageID #722, 728; Tr. 609-616, 617-624). Plaintiff asserts that her treating physician, Dr. Kenny Manion, and his nurse, Gwen Wright, APRN, prepared the opinion (DN 18-1 PageID # 722, 728).  Plaintiff argues the ALJ erred as a matter of law because he failed to consider and give controlling weight to Dr. Manion's opinion

5

(Id.). Alternatively, Plaintiff contends the ALJ erred as a matter of law because he failed to apply the appropriate factors and provide "good reasons" when he determined how much weight to accord the opinion (Id.).

Defendant points out that Plaintiff has not provided any credible evidence showing that Dr. Manion is a treating source (DN 19 PageID # 736). Further, Defendant asserts that the ALJ properly evaluated Dr. Manion's opinion (Id.).

2

The undersigned will first address Plaintiff's argument that the ALJ erred as a matter of law because he failed to consider and give controlling weight to Dr. Manion's opinion. The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), id. § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), id. § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and

> extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).
>
> On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

Notably, the treating source rule only applies to a "medical opinion" rendered by a "physician, psychologist, or other acceptable medical source" "who has, or has had, an ongoing treatment relationship" with the claimant. 20 C.F.R. §§ 404.1502, 404.1513(a)(1), 404.1527(a)(2) and (c), 416.902, 416.913(a)(1), 416.927(a)(2) and (c); Social Security Rule 96-2p; Gayheart, 710 F.3d at 375-76; Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The first requirement is satisfied because there is no dispute that the assessment at issue is a medical opinion. Further, there is no dispute that Dr. Manion satisfies the second requirement because he is a physician.

Ms. Wright, however, does not satisfy the second requirement because she is a nurse practitioner. 20 C.F.R. §§ 404.1513(a) and (d)(1), 416.913(a) and (d)(1).

With regard to the third requirement, "[a] physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" Smith v. Commissioner, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502). Clearly, Plaintiff's general assertion is not sufficient. A review of Dr. Manion's treatment records must be conducted to assess whether he has, or has had, an ongoing treatment relationship with Plaintiff. Unfortunately, Dr. Manion's treatment records are not in the administrative record. Notably, during the administrative hearing the ALJ specifically asked Plaintiff's counsel if Dr. Manion's treatment records were in the administrative record (Tr. 37-38). Plaintiff's counsel confirmed they were not and explained that he decided not to obtain and submit them to the ALJ because counsel believed the hospital records were a better source of information about Plaintiff's recent acute medical problems (Id.).

In sum, there is no evidence in the administrative record that substantiates Plaintiff's bare assertion that Dr. Manion is a treating source within the meaning of the regulations. It is well settled law that medical "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" Gayheart, 710 F.3d at 376. Therefore, the ALJ's decision not to assess Dr. Manion's opinion for controlling weight fully comports with applicable law.

3

Next, the undersigned will address Plaintiffs argument that the ALJ erred as a matter of law because he failed to apply the appropriate factors and provide "good reasons" when he determined how much weight to accord to Dr. Manion's opinion.

In relevant part, the administrative decision reads as follows:

> In contrast, the residual functional capacity assessment signed by Kenny Manion, M.D., and Gwen Wright, NP, is given little weight. (Exhibit 14F). The record contains no treatment records from these two providers. Also, their opinions do not match the treatment records that are in the records.

(Tr. 18). Although relatively brief, the ALJ's analysis is more than adequate. It clearly indicates the ALJ discounted the opinion because the opinion was unsupported by treatment records from Dr. Manion and Nurse Wright and inconsistent with other treatment records in the administrative record. Supportability and consistency are factors that may be considered in deciding how much weight to accord to a medical opinion in the record. <u>Gayheart</u>, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(3) and (4), 416.927(c)(3) and (4). The ALJ could not consider factors such as examining relationship, length of treatment, and specialization because of the absence of treatment records. 20 C.F.R. §§ 404.1527(c)(1) and (5), 416.927(c)(1) and (5). In light of the evidence in the record the ALJ provided "good reasons" for discounting Dr. Manion's opinion. Therefore, the ALJ's assignment of weight to the opinion of Dr. Manion comports with applicable law.

4

Next, Plaintiff challenges the residual functional capacity assessment in Finding No. 5 by arguing that the ALJ failed to seriously consider the disabling effect that Plaintiff's weight had in

9

conjunction with her diabetes, COPD, cardiac problems, neuropathy, and mental problems[2] (DN 18-1 PageID # 722). The ALJ indicated that he considered the impact Plaintiff's obesity had on her co-existing impairments in assessing her residual functional capacity (Tr. 16). Furthermore, the ALJ's residual functional capacity assessment is supported by substantial evidence in the record. Therefore, there is no merit to Plaintiff's argument.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:	Counsel

---

2 In the argument, Plaintiff characterizes herself as having been diagnosed with "serious mental problems" (DN 18-1 PageID # 722). However, Plaintiff acknowledges that substantial evidence supports Finding No. 2 which includes the ALJ's determination that Plaintiff's mental condition is a nonsevere impairment (Tr. 14-16). Because the ALJ could and did consider the limitations imposed by Plaintiff's mental impairment in determining whether she retained sufficient residual functional capacity to perform other jobs in the national economy (Tr. 14-18), the ALJ's failure to find that Plaintiff's mental impairment is "severe" within the meaning of the regulations could not constitute reversible error. Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).